No. 24-1011

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

AIMEE STURGILL,

Plaintiff-Appellant,

v.

AMERICAN RED CROSS,

Defendant-Appellee

_____

On appeal from the United States District Court for the
Eastern District of Michigan, Southern Division
Case No. 2-22-CV-11837, Judge Paul D. Borman

_____

**CORRECTED BRIEF OF DEFENDANT, APPELLEE
AMERICAN RED CROSS.**

Constantinos G. Panagopoulos
Sara Rangiah
**Ballard Spahr LLP**
1909 K Street N.W.
12th Floor
Washington DC 20006
cgp@ballardspahr.com
rangiahs@ballardspahr.com
COUNSEL FOR DEFENDANT-APPELLEE

Date: April 8, 2024

**ORAL ARGUMENT REQUESTED**

# DISCLOSURE STATEMENT

The American National Red Cross ("Red Cross") is a Federally chartered instrumentality of the United States and a body corporate and politic in the District of Columbia established pursuant to 36 USC 300101. The Red Cross has no parent corporation and issues no stock. Accordingly, no publicly held corporation owns 10% or more of the Red Cross.

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ................................................................... i

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF ISSUES ..................................................................... 1

    I.     STATEMENT OF THE CASE ............................................. 2

    II.    STANDARD OF REVIEW ................................................. 8

    III.   SUMMARY OF ARGUMENT ........................................... 9

    IV.   ARGUMENT ...................................................................... 9

        A.    The District Court Correctly Held that Ms. Sturgill Failed to Adequately Plead a Title VII Failure to Accommodate Claim ........................................................ 9

        B.    The District Court Correctly Held that Ms. Sturgill's Failure to Accommodate Claim Does Not Encompass a Traditional Disparate Treatment Claim ................................... 29

    V.    CONCLUSION ................................................................ 31

ADDENDUM TO DEFENDANT- APPELLEE BRIEF ....................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansonia Bd. of Educ. v. Philbrook,*
  479 U.S. 60 (1986)..................................................................................11, 12

*Armengau v. Cline,*
  7 F. App'x 336 (6th Cir. 2001) ....................................................................8, 30

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)..........................................................................................9

*Caspersen v. W. Union, LLC,*
  No. 23-CV-00923-NYW-SBP, 2023 WL 6602123 (D. Colo. Oct.
  10, 2023) ........................................................................................................23

*Devore v. Univ. of Ky. Bd. of Trs.,*
  No. 5:22-cv-00186-GFVT-EBA, 2023 U.S. Dist. LEXIS 167239
  (E.D. Ky. Sep. 18, 2023)................................................................................26

*Dzik v. Accident Fund Ins. Co.,*
  No. 1:23-CV-193, 2024 WL 662485 (W.D. Mich. Jan. 25, 2024).....................26

*E.E.O.C. v. Chevron Phillips Chem. Co., LP,*
  570 F.3d 606 (5th Cir. 2009) ..........................................................................11

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
   575 U.S. 768 (2015)...................................................................................11, 29

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania,*
  877 F.3d 487 (3d Cir. 2017) ...............................................................20, 24, 25

*Finkbeiner v. Geisinger Clinic,*
  623 F. Supp. 3d 458 (M.D. Pa. 2022), appeal dismissed, No. 22-
  2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023) ...........................................25

*Gardner-Alfred v. Fed. Rsrv. Bank of New York,*
  651 F. Supp. 3d 695 (S.D.N.Y. 2023) .............................................................22

*Goodrich v. Good Samaritan Reg'l Health Ctr.*,
No. 22-CV-2950-DWD, 2023 WL 3043282 (S.D. Ill. Apr. 21,
2023) .............................................................................................................21

*Griffin v. Massachusetts Dep't of Revenue*,
No. 22-CV-11991-FDS, 2023 WL 4685942 (D. Mass. July 20,
2023) ......................................................................................................14, 26

*Hall v. Baptist Mem'l Health Care Corp.*,
215 F.3d 618 (6th Cir. 2000) .........................................................................29

*Haskins v. Bio Blood Components*,
No. 1:22-CV-586, 2023 WL 2071483 (W.D. Mich. Feb. 17, 2023).................11

*Hudson v. City of Highland Park*,
943 F.3d 792 (6th Cir. 2019) .........................................................................30

*Jackson v. City of Columbus,*
194 F.3d 737, 745 (6th Cir.1999) .....................................................................8

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) ......................................................................16

*Kiel v. Mayo Clinic Health System Southeast Minnesota*,
No. 22-1319, 2023 WL 5000255 (8th Cir. August 4, 2023) .................16, 17, 18

*League of United Latin Am. Citizens v. Bredesen,*
500 F.3d 523 (6th Cir. 2007) ...........................................................................9

*Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*,
864 F.3d 455 (6th Cir. 2017) ...........................................................................8

*Martin v. Saginaw Cnty. Rd. Comm'n,*
606 F. Supp. 3d 639 (E.D. Mich. 2022) .........................................................30

*Morgan v. Church's Fried Chicken*,
829 F.2d 10 (6th Cir. 1987) .............................................................................8

*Passarella v. Aspirus, Inc.*,
No. 22-CV-287-JDP, 2023 WL 2455681 (W.D. Wis. Mar. 10,
2023) ..............................................................................................19, 25, 28

*Passarella v. Aspirus, Inc.*,
    Nos. 22-cv-287, 2023 U.S. Dist. LEXIS 40958 (W.D. Wis. Mar.
    10, 2023) ........................................................................................25

*Petermann v. Aspirus, Inc.*,
    No. 22-CV-332-JDP, 2023 WL 2662899 (W.D. Wis. Mar. 28,
    2023) ...............................................................................................27

*Pugh v. Holden-Selby*,
    No. 2:15-CV-10604-GAD-PTM, 2015 U.S. Dist. LEXIS 105136
    (E.D. Mich. July 1, 2015) .................................................................30

*Reed v. Int'l Union*,
    564 F.3d 781 (6th Cir. 2009) ............................................................29

*Saylor v. Parker Seal* Co.,
    975 F.2d 252 (6th Cir. 1992) ..............................................................8

*Scafidi v. B. Braun Med., Inc.*,
    No. 8:22-CV-2772-VMC-TGW, 2024 WL 184258 (M.D. Fla. Jan.
    17, 2024) ..........................................................................................24

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).............................................................................8

*Tepper v. Potter*,
    505 F.3d 508 (6th Cir. 2007) ............................................................30

*Trans World Airlines, Inc. v. Hardison*,
    432 U.S. 63 (1977)............................................................................11

*Welsh v. United States*,
    398 U.S. 333 (1970)...........................................................1, 2, 19, 20

*Wisconsin v. Yoder*,
    406 U.S. 205 (1972).............................................................19, 20

*Wittstock v. Mark A. Van Sile, Inc.*,
    330 F.3d 899 (6th Cir. 2003) ..............................................................8

**Statutes**

ADA ................................................................................................11

Civil Rights Act of 1964 Title VII .................................................................*passim*

Illinois Health Care Right of Conscience Act .........................................................21

**Other Authorities**

App. R. 14 .................................................................................................10, 11, 13

App. R. 14-1 at p. 26-30 .........................................................................................16

Dec. 6, 2021 Denial Letter, RE 28-4, PageId.442 ...................................................6

Denial Letter, RE 28-2, PageId. 437-438 ................................................................4

EEOC Guidance, Section 12: Religious Discrimination .........................................20

Fed. R Civ. P. 12(b)(6)..........................................................................................1, 8

Order, RE 60 ........................................................................................................7, 14

Request, RE 28-1 ..................................................................................................2, 3

Title VII, 42 § U.S.C. 2000e ...................................................................................6

## STATEMENT REGARDING ORAL ARGUMENT

The Red Cross disagrees with Ms. Sturgill's assertion that any discussion regarding the procedural and factual record of the case would assist the Court because it is in no way unusual that: 1) a court deciding a motion to dismiss would consider only the pleadings in deciding that motion, or; 2) it was inappropriate for the District Court to decide the pending motion to dismiss. Nevertheless, the Red Cross is not opposed to oral argument if the Court determines that it would be helpful to decide the issues on appeal.

## JURISDICTIONAL STATEMENT

Defendant, Appellee American Red Cross does not disagree with Plaintiff, Appellant, Aimee Sturgill's Statement of Jurisdiction.

## STATEMENT OF ISSUES

Ms. Sturgill misstates and mischaracterizes the statement of issues on appeal. First, it is inconceivable that in alleging a religious discrimination claim that Ms. Sturgill would not be required to allege that she possessed a sincerely held religious belief. Second, the district court did not apply a heightened pleading standard. The district court merely considered the pleadings AND the documents referenced by and incorporated into the pleadings to correctly determine that Ms. Sturgill's second amended complaint should be dismissed under Fed. R Civ. P. 12(b)(6). Third, *Welsh v. United States*, 398 U.S. 333 (1970), a military conscientious objector case is

inapposite to Ms. Sturgill's religious accommodation claim. The appropriate statement of issues is as follows:

1.    Did the District Court err in finding that Ms. Sturgill failed to plausibly plead a failure to accommodate claim?

      The Red Cross Answers: **No.**

2.    Did the District Court err in holding that Ms. Sturgill failed to assert a traditional disparate treatment claim?

      The Red Cross Answers: **No**

## I.    STATEMENT OF THE CASE

This matter arises from a COVID-19 vaccine mandate implemented by the American Red Cross after the federal government imposed a mandate requiring that all contractors mandate COVID-19 vaccines for employees. As a part of the implementation of the mandate the Red Cross retained an experienced employment lawyer to evaluate and consider religious accommodation requests related to the mandate. The Red Cross required that all of its employees become fully vaccinated from COVID-19. Second Amended Complaint ("SAC"), RE 21, PageID.253. Ms. Sturgill was employed with the Red Cross and sought an exemption from the vaccine mandate based upon her alleged religious beliefs. *Id.* at PageID.252-254. Ms. Sturgill submitted a Religious Workplace Accommodation Request (the "Accommodation Request") to be exempted from the COVID-19 vaccine requirement allegedly based on her Christian faith. Nov. 1, 2021 Accommodation

Request, RE 28-1, PageId. 434-435. Boiled down to its essence, Ms. Sturgill's accommodation request can be characterized as follows: She did not want to be vaccinated because she made the personal decision that it was inappropriate to do so.

Ms. Sturgill claimed that the vaccine mandate would "go against [her] conscience and against God's law." *Id.* at PageId. 435.

> By trusting in His perfect design, I can make decisions from a place of education. This helps empower me to make healthy choices for my life.
>
> * * *
>
> By taking the upmost care for my body allows me to continue to honor God and the temple he gave me without going against my conscience.
>
> * * *

*Id.* at PageID. 434-435. Ms. Sturgill also offered a medical concern in her Accommodation Request:

> The ingredients in the vaccines can cause serious harm and even death to our body. Having a blood clotting disorder, myself, makes this a VERY important concern to me. Life is a gift from God and that leads us to take the upmost [sic] care of our own bodies. ALL human life has intrinsic value.

*Id.* at PageID. 434.

The Red Cross denied Ms. Sturgill's Accommodation Request by letter dated November 19, 2021. In that letter, the Red Cross explicitly detailed why her beliefs did not qualify as a "religious belief" within the meaning of Title VII of the Civil Rights Act of 1964, and offered her the opportunity to submit additional information:

Your request for an accommodation is denied. We are unable to grant your request for an exemption from the vaccine requirement for the following reasons:

1.  You have failed to identify a religious belief, practice, or observance that prohibits you from being vaccinated against COVID-19.

2.  The information you provided about your belief, practice, or observance does not meet the definition of a "religious" belief or practice within the meaning of Title VII of the Civil Rights Act of 1964. Specifically, you state that you trust in God's "perfect design … to make healthy choices for my life" and that you seek to take "the upmost care for my body." However, you do not explain whether your belief, practice, or observance prohibits all potentially harmful ingredients from being ingested, and if not, why not.

3.  You rely on inaccurate factual statements to form the basis of your religious belief, specifically, your suggestion that the vaccine is not safe. See https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html

4.  You have stated that your religious beliefs prevent you from receiving the COVID-19 vaccine. However, our records reflect that you have received a three-dose series of Hepatitis B vaccine.

5.  You rely upon factors that are not appropriate bases for a religious accommodation request, such as your blood clotting disorder, which can be asserted in a request for a medical accommodation.

If there is additional information that you would like us to consider in connection with your request, please submit this information as soon as possible. If additional information is not received within two days from the date of this denial, this decision will be considered final.

Nov. 19, 2023 Denial Letter, RE 28-2, PageId. 437-438.

Shortly after the November 19, 2021 Denial Letter, Ms. Sturgill submitted an

appeal letter. Unfortunately, Ms. Sturgill continued to underscore an areligious

belief system and was unresponsive to the concerns noted in the Red Cross' initial denial:

> I begin my individual decision-making with a heart of faith and trust that such decisions should always rest between the Christian (myself) and my Maker.
>
> * * *
>
> MY beliefs are MY beliefs. I use this sincerely held belief to guide my choices in everyday life.
>
> * * *
>
> My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body, including violation my individual religious beliefs. I will not defile my body with unwanted intrusions.
>
> * * *
>
> Getting this Covd-19 [sic] vaccine goes against my God given conscience. I will not alter God's design. I am wonderfully and fearfully made. Therefore, I take the BEST care of my individual body.
>
> * * *
>
> My rights are God-given inherent rights. I am made in His image and my rights reflect that fact. To violate his image is to violate the Lordship of Christ.
>
> * * *

Appeal Letter, RE 28-3, PageId. 440. In short, Ms. Sturgill emphasized that she did not want to be vaccinated.

Ms. Sturgill's Accommodation Request was again denied because: (1) her objection was based on "individual decision-making"; (2) while she claimed to not want to defile her body with unwanted intrusions she had failed to identify any

religious belief, practice or observance that deemed the COVID-19 vaccine "defiling." Dec. 6, 2021 Denial Letter, RE 28-4, PageId.442. Ms. Sturgill refused to receive the COVID-19 vaccine and was terminated on January 4, 2022, along with all other Red Cross employees who had not received the vaccine at that time and had not received an accommodation. SAC, RE PageId. 256.

Ms. Sturgill sued the Red Cross on August 2022 claiming that her religious accommodation request was wrongfully denied. S*ee generally*, Initial Compl., RE 1. Ms. Sturgill amended her pleadings twice, and in the SAC she included a single count against the Red Cross for violation of Religious Discrimination – Failure to Accommodate under Title VII, 42 § U.S.C. 2000e, *et. seq.* Order, RE 60, Pageid.1944-45. On June 23, 2023, the Red Cross moved to dismiss the Second Amended Complaint. *See generally*, MTD, RE 27.

On October 19, 2023, Ms. Sturgill filed a supplemental brief in support of her Opposition to the Motion to Dismiss. *See generally,* Supp. Brief, RE 44. In that supplemental brief, Ms. Sturgill argued, among other things, that the district court should consider deposition testimony of the Red Cross' outside counsel, Jeffrey Larroca.[1] *Id.* at PageId. 810.

---

[1] Of course, the deposition excerpts were not considered by the court in deciding the motion to dismiss as they were extraneous to the pleadings.

On December 15, 2023, the U.S. District Court for the Eastern District of Michigan ("District Court") granted the Red Cross' Motion to Dismiss without oral argument. *See generally*, Order, RE 60. The District Court held that Ms. Sturgill's Accommodation Request did not evince a *bona fide* religious belief. *Id.* at PageId. At 1954, 1962. Rather, the District Court determined that Ms. Sturgill's beliefs were medical judgments. *Id.* at 1954. In reaching this conclusion, the District Court noted that Ms. Sturgill's Accommodation Request was "littered with conclusory statements claiming her request for accommodations are religious in nature" and batched her request in to two primary sets of beliefs. *Id.* at PageId. 1955-1961. The first set of beliefs relate to Ms. Sturgill's belief that she must take proper care of her health and body, and the second, being that she can rely on her conscience to dictate what rules or laws she should follow. *Id.*

Following a thorough examination of the pleadings, the referenced Accommodation Request and denial letters, and a litany of cases across the country, the District Court concluded that Ms. Sturgill's belief system did not warrant the heightened protections under Title VII because they were purely medical in nature and that reliance on one's conscience is an areligious belief under Title VII.

## II. STANDARD OF REVIEW

The Sixth Circuit reviews *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6). *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017).

"Rule 12(b)(6) provides for dismissal of a complaint based on the plaintiff's 'failure to state a claim upon which relief can be granted.'" Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court may not only consider the complaint, but materials appended to or incorporated in it by reference, as well as matters of judicial notice and documents in the public record. *Armengau v. Cline*, 7 F. App'x 336, 345 (6th Cir. 2001) (*citing to Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999).

The court must treat well-pleaded allegations of the pleadings as true and construe allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal* Co., 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be treated as true. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). The factual allegations contained in the complaint must be enough to make a right to relief more

than speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (*citing Twombly*, 550 U.S. at 555 n.3, 558) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

## III.  SUMMARY OF ARGUMENT

The District Court correctly held that Ms. Sturgill failed to set forth a plausible claim for failure to accommodate under Title VII. Ms. Sturgill references conclusory assertions related to the religiosity of her beliefs all the while ignoring the legal deficiencies fatal to her claim and highly relevant case law, which warranted the dismissal of her failure to accommodate claim. Additionally, she cannot spin a claim for failure to accommodate to include a traditional disparate treatment claim. Even if that were the case, Ms. Sturgill did not plausibly allege that she was treated any differently than any similarly situated Red Cross employee.

## IV.  ARGUMENT

### A.  The District Court Correctly Held that Ms. Sturgill Failed to Adequately Plead a Title VII Failure to Accommodate Claim

Ms. Sturgill claims that the District Court erred in dismissing her failure to accommodate claim because it disregarded direct evidence of discrimination that the Red Cross (1): failed to engage in an interactive process; and (2): wrongly denied Ms. Sturgill's Accommodation Request because it relied on her past history of

receiving a three dose Hepatitis B vaccine and failed to consider that her belief system could evolve over time. App. Brief, App. R. 14 at p. 17, 23. Ms. Sturgill further contends that the District Court imposed a heightened pleading standard. App. Brief, App. R. 14 at p. 16-18. Nonetheless, Ms. Sturgill asserts that she has adequately pled a failure to accommodate claim because her characterization of her own beliefs as "religious" deserve great weight, and because her allegations related to her reliance on her conscience and that she was as "God made her" are sufficient to allege a religious belief. Finally, Ms. Sturgill contends that her failure to accommodate claim "encompasses" a disparate treatment claim and that she sufficiently pled a traditional disparate claim as well.

Ms. Sturgill's arguments ignore well-established principles related to Title VII, rely on cases that do not relate to Title VII protections and/or grossly misinterpret the law governing the issues at hand. The Red Cross addresses each of Ms. Sturgill's arguments in turn.

### i       Ms. Sturgill did not plead direct evidence of discrimination

Ms. Sturgill argues that her complaint pleads direct evidence of religious discrimination. App. Brief at Page 22-23. She is wrong. The alleged "evidence" Ms. Sturgill relies upon is insufficient to support an inference of religious discrimination for failure to accommodate. Ms. Sturgill claims that the District Court ignored direct evidence that the Red Cross failed to engage in an interactive process

and to consider that her belief system could change over time to excuse her prior vaccination history of getting vaccinated against Hepatitis B. App. Brief, App. R. 14 at p. 17, 23.

In *Haskins v. Bio Blood Components*, No. 1:22-CV-586, 2023 WL 2071483, *3 (W.D. Mich. Feb. 17, 2023), however, the U.S. District Court for the Western District of Michigan held that unlike the ADA, there is no legal obligation for an employer to engage in an interactive process or conduct a sit down meeting with an employee seeking a religious accommodation under Title VII. The *Haskins* court specifically held that seminal Title VII cases such as *Abercrombie* or *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) did not interpret Title VII to require an interactive process such as that required by the ADA. *Id.* Nevertheless, Ms. Sturgill seeks to have this Court impute ADA requirements to her Title VII claim. *See* App. Brief, App. R. 14 at p. 25 (*citing to E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (discussing the interactive process under the ADA).

Ms. Sturgill's reliance on dicta in *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) is also misplaced. In *Ansonia*, the employee had already established that he was entitled to a religious accommodation. *Id.* at 66. The question before the Supreme Court was whether an employer's accommodation obligation under §

2000e(j)[2] includes a duty to accept the employee's proposed accommodation when there is no undue hardship and the employer already offered a reasonable accommodation to the employee. *Id.* at 67-70. In addressing this issue, the Supreme Court referenced that courts interpreting the legislative history of 2000(e)(j) have noted that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business", but that an employer is not mandated to provide the accommodation preferred by the employee when it already offered a reasonable accommodation. *Id.* at 68-69. In no part of the *Ansonia* decision does the Supreme Court consider the type of process required when an employer is considering whether an accommodation request should be granted. *See generally, id.*

Further, the record refutes Ms. Sturgill's claims that the Red Cross undertook a "rigid approach" to processing her Accommodation Request and that it did not "request additional information from her." App. Brief, R. 14 at p. 25. Despite not legally required to engage in an interactive process, the Red Cross explained to Ms. Sturgill exactly how her request for accommodation failed, provided a roadmap as to what information needed to be provided to allow the Red Cross to grant the accommodation, and invited Ms. Sturgill to provide additional information. RE 28-

---

[2]     Prior to amendment this section was referred as § 701(j) as noted in the *Ansonia* decision.

2, 28-3, and 28-4. Ms. Sturgill took full advantage of this opportunity when she sent the Red Cross an appeal letter of additional information in support of her request. Exhibit 4 to MTD, RE 28-3. Accordingly, no direct evidence of discrimination can be inferred from Ms. Sturgill's allegations that the Red Cross failed to engage in an interactive process.

The Red Cross' reliance on Ms. Sturgill's history of receiving the Hepatitis B vaccine is also not direct proof of discrimination for failure to accommodate. Ms. Sturgill alleges that because the Red Cross' Nov. 19, 2021 Denial Letter referenced her prior Hepatitis B vaccination, this is somehow proof that the Red Cross 'imposed its own subjective standard of religiosity." App. Brief, App. R. 14 at p. 23. This argument attempts to reduce the basis of the Red Cross' denial of the Accommodation Request to a single stand-alone issue. The Red Cross denied Ms. Sturgill's Accommodation Request because she failed to demonstrate how her aversion to the COVID-19 vaccine was religious in nature. Specifically, Ms. Sturgill's objection to the COVID-19 vaccine sounded in medical and personal judgments:

> By trusting in His perfect design, I can make decisions from a place of education. This helps empower me to make healthy choices for my life.

> \* \* \*

> By taking the upmost care for my body allows me to continue to honor God and the temple he gave me without going against my conscience.

> \* \* \*

The ingredients in the vaccines can cause serious harm and even death to our body. Having a blood clotting disorder, myself, makes this a VERY important concern to me. Life is a gift from God and that leads us to take the upmost [sic] care of our own bodies. ALL human life has intrinsic value.

\* \* \*

MY beliefs are MY beliefs. I use this sincerely held belief to guide my choices in everyday life.

\* \* \*

My body is the temple of the Holy Spirit, and taking the COVID-19 vaccine, would be defiling my body, including violation my individual religious beliefs. I will not defile my body with unwanted intrusions.

\* \* \*

Getting this Covd-19 [sic] vaccine goes against my God given conscience. I will not alter God's design. I am wonderfully and fearfully made. Therefore, I take the BEST care of my individual body.

\* \* \*

RE 28-2 and 28-4.

While it is true that a person's religious views may change over time, the District Court correctly held that Ms. Sturgill's Accommodation Request did not state that her beliefs have evolved such that she would no longer receive *any* vaccines. Order, RE 60 at PageID.1957 (emphasis added). While Ms. Sturgill claimed that her beliefs had modified over time, she failed to provide a reason as to whether her aversion to the COVID-19 vaccine derives from a religious belief about vaccines in general, or whether her religion imposes a limitation solely to the COVID-19 vaccine. *See Griffin v. Massachusetts Dep't of Revenue,* No. 22-CV-

11991-FDS, 2023 WL 4685942, *6-7 (D. Mass. July 20, 2023) (holding that an employee's complaint failed to allege a bona fide religious belief when the employee did not "allege that her religion requires her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines. And there is no specific indication as to how her beliefs or principles have affected other medical decisions in the past. In short, it does not appear that her opposition to the COVID-19 vaccine in particular derives from a religious belief about vaccines in general, or indeed any preexisting principle of any kind").

Finally, Ms. Sturgill completely ignores that her allegations establish that her concerns were not religious in nature. Those concerns were set forth in correspondence referred to in the second amended complaint and therefore properly considered by the district court. *See*, RE 28.

It is because of Ms. Sturgill's failure to link her objection to the COVID-19 vaccine to a religious nexus, rather than her prior history of receiving the Hepatitis B vaccine, that the Red Cross denied her Accommodation Request. Reference to Ms. Sturgill's prior Hepatitis B vaccination is not direct evidence that the Red Cross imposed its own subjective analysis of religiosity, and the District Court correctly concluded that Ms. Sturgill failed to allege a religious nexus as to how her beliefs support an aversion to the COVID-19 vaccine specifically.

### ii    Ms. Sturgill Failed To Plausibly Establish a Religious Nexus to Her Objection To The COVID-19 Vaccine

Ms. Sturgill claims that the December 15, 2023 Order should be vacated because the District Court imposed a "heightened pleading standard" that she plead every element of a *prima facie* failure to accommodate claim. App. Brief. App. R. 14-1 at p. 26-30. While the District Court went through each *prima facie* element of a failure to accommodate claim, it rendered its decision on the grounds that Ms. Sturgill failed to state a plausible claim for which relief could be granted. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (examination of the elements of each cause of action help to determinate whether a claimant has set forth a plausible claim). Specifically, the District Court determined that Ms. Sturgill failed to allege any plausible fact that her objection to the COVID-19 vaccine was based on a *bona fide* religious belief under the appropriate standard set forth in *Iqbal* and *Twombly*. Order, RE 60 at PageID 1953-1962 (stating that, the Court need not accept all allegations asserted as true, and can ignore unsupported legal and conclusory factual assertions, and that, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

In support of her argument that she was held to a "heightened pleading standard", Ms. Sturgill relies on various cases and an *amicus* brief filed by the EEOC in *Kiel v. Mayo Clinic Health System Southeast Minnesota*, No. 22-1319, 2023 WL 5000255 (8th Cir. August 4, 2023). App. Brief. App. R. 14-1 at p. 26-30. These

authorities, however, only underscore Ms. Sturgill's failure to plead sufficient facts to support an inference that she held a religious motivation for objecting to the COVID-19 vaccine.

For example, in *Kiel*, the U.S. District Court of Minnesota concluded that plaintiffs Shelly Kiel and Kenneth Ringhoefer did not plausibly allege that their objection to the COVID-19 vaccine was based on a *bona fide* religious belief. *Kiel*, 2023 WL at *7-9. Plaintiff Kiel alleged that: (1) her body is a temple; (2) taking the COVID-19 vaccine would violate her religious beliefs and conscience; (3) and that taking the COVID-19 vaccine would go against her anti-abortion beliefs. *Id.* at *8. The *Kiel* Court determined that these allegations did not plausibly plead a religious accommodation claim because plaintiff Kiel failed to "tie her opposition to the vaccine to any particularized religious belief." *Id.* Rather, the Court held that Kiel's statements expressed a concern of vaccine safety. *Id.*

Likewise, the *Kiel* Court determined that plaintiff Ringhoefer also failed to allege a religious nexus between his objection to the COVID-19 vaccine and his stated beliefs. *Id.* at *9. Plaintiff Ringhoefer alleged that: (1) his body is a temple; (2) it is his "choice" whether to receive vaccines; (3) taking the vaccine would go against his anti-abortion beliefs. *Id.*

In its *amicus* brief, the EEOC argued that plaintiffs Kiel and Ringhoefer's "body is a temple" and "immune sanctity" allegations were enough to survive a

motion to dismiss because there remained factual questions whether these beliefs were religiously linked. *Id.* at 1744. Notably, the EEOC argued that the *Kiel* plaintiffs "body as a temple" allegations could survive a motion to dismiss because they had also alleged that they were opposed to the COVID-19 vaccine because it conflicted with their beliefs against abortion. *Id.* at 1744-45. Thus, the EEOC argued that Kiel and Ringhoefer's "body as a temple" allegations were sufficient at the pleading stage because an inference could be made that their religion prohibited them from defiling their bodies with a substance that contained aborted fetal cells. *Id.*

Ms. Sturgill's SAC consists of conclusory statements and recitations of legal standards, but offers no factual basis to support an inference that the Red Cross wrongly denied her a religious accommodation. Like the *Kiel* plaintiffs, Ms. Sturgill's Accommodation Request contained religious but generalized statements that, her "body is a temple," that she thought the COVID-19 vaccine would defile her body, and that she should rely on her conscience and innate immunity. Like the *Kiel* Court, the District Court found that these statements evinced a non-religious motivation. Unlike the *Kiel* plaintiffs, Ms. Sturgill did not identify any plausible religious nexus supporting her objection the COVID-19 vaccine. EEOC Brief. 48 at PageID 1096-1098.

### iii Despite Her Characterization Of Her Beliefs As "Religious", Ms. Sturgill's Statements That Her Conscience Directed Her To Refrain From The COVID-19 Vaccine And That She Should Remain As "God Made Her" Are Not "Religious Beliefs" As Correctly Held By The District Court

Despite her conclusory statements and apparent medical motivations to avoid the COVID-19 vaccine, Ms. Sturgill contends that the District Court should have just deemed her beliefs "religious" simply because she characterized them so. However, a court is obligated to "distinguish between [a] religious belief and other matters of personal conviction, because only religious beliefs warrant the heightened protection of … Title VII." *Passarella v. Aspirus, Inc.,* No. 22-CV-287-JDP, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023)(citing to *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

Ms. Sturgill argues that the District Court got it wrong and that her reliance on her conscience and to "remain as God made her" was proof of a *bona fide* religious motivation for her aversion to the COVID-19 vaccine. In large part, Ms. Sturgill bases this argument on the Supreme Court's ruling in *Welsh v. United States,* 398 U.S. 333, 90 S. Ct. 1792, 26 L. Ed. 2d 308 (1970).

However, *Welsh* does not pertain to Title VII protections. *Id.* Rather, in *Welsh* the Supreme Court held that the conscientious objector exemption under the Selective Service statutes applied to a draftee who espoused nonreligious moral considerations. *Id.* at 339. In reaching its conclusion, the Supreme Court stated that

the test for determining whether a belief is "religious" is whether the stated beliefs "occupy in the life of that individual 'a place parallel to that filled by…God' in traditionally religious persons." *Id.* at 339. The *Welsh* Court determined that the plaintiff's conscientious belief to oppose war functioned as a "religion in his life." *Id.* at 340. The *Welsh* decision on the reliance on one's conscience relates to whether "nontheistic beliefs could also be religious." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017). *See also*, EEOC Guidance, *Section 12: Religious Discrimination*, at n. 9 (citing to *Welsh* for the premise that "belief in God or gods is not necessary" for Title VII protection.) Ms. Sturgill cannot seek cover under the *Welsh* decision, when notably here, she argues that she holds non-secular beliefs which motivate her objection to the COVID-19 vaccine.

As discussed by the District Court in great detail, reliance on one's conscience is not deemed a protected religious belief under Title VII. Order, RE 60 at PageID 1957-1962. Courts have consistently ruled that such beliefs do not meet the standard for protection under Title VII because they could lead to objections and requests for accommodations based on personal sensibilities, which could undermine the concept of ordered liberty. *See Yoder,* 406 U.S. at 215-216 (the "very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.")

In her appellate brief, Ms. Sturgill cites to various cases in support of her argument that reliance on her conscience is a religious belief. However, the cases do not support her argument that the District Court erred in finding that she not plead a *bona fide* religious belief.

For example, Ms. Sturgill's reliance on *Goodrich v. Good Samaritan Reg'l Health Ctr.,* No. 22-CV-2950-DWD, 2023 WL 3043282 (S.D. Ill. Apr. 21, 2023) is misplaced. In *Goodrich*, the Court determined that a plaintiff's "conscientious refusal" to weekly COVID-19 testing constituted a "religious belief" at the motion to dismiss stage when he specifically referenced the Illinois Health Care Right of Conscience Act ("IHCRCA"). The IHCRCA includes as in its definition of the word "conscience" a "sincerely held set of moral convictions arising from belief in and relation to God." *Id.* at *4.

Ms. Sturgill's attempt to divorce the term "conscience" from "religious belief" there is unavailing. Ms. Sturgill did not sufficiently allege that COVID-19 vaccine violates a religious belief. Rather she alleges that her conscience directs her to take the "BEST care of [her] individual body", that she must 'take the upmost car[e] of her body", that the "ingredients in the vaccine can cause serious harm and even death…", and that having a "blood clotting disorder … makes this a VERY important concern for [her]." Accordingly, Ms. Sturgill's claims that the COVID-19 vaccine violates her conscience because she views the vaccine to be unsafe not

because it offends her moral conscience due to a practice or observance that is religious in nature.

Likewise, Ms. Sturgill cannot rely on *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 651 F. Supp. 3d 695 (S.D.N.Y. 2023). In *Gardner*, one of the plaintiffs alleged that she was "a member of the Temple of Healing Spirit, which believes in holistic approaches to health" and "opposes invasive techniques to traditional medicine." *Id.* at 721. The *Gardner-Alfred* Court determined that such allegations were sufficient to qualify as a "religion" under Title VII.[3] *Id.* Importantly, the Court also noted that the plaintiff sufficiently alleged a nexus between her objection to the COVID-19 vaccine and her religious beliefs because as a member of the Temple of Healing Spirit, she "opposes the invasive techniques of Western medicine and thus the 'COVID-19 vaccines represent unacceptable intrusions on her personal form' due to their 'provenance, chemical composition, and origin.'" *Id.* at 721-22. Ms. Sturgill did not make any similar allegations that could tie her objection to COVID-19 immunization to her religion. She claim that she is Lutheran Christian. She has

---

[3]     Ms. Sturgill's block quote of the *Gardner-Alfred* case on page 40 in her Appellate Brief relates to whether the plaintiff's beliefs in the Temple of Healing Spirit qualifies as a "religion" under Title VII does not address the central question here, which is whether there was a sufficiently pled a religious nexus connecting her objection to the COVID-19 vaccine to a religious belief.

not cited to any tenet of the Lutheran church that opposes western medicine in general or the COVID vaccine specifically.

Additionally, Ms. Sturgill asserts that her case is analogous to *Caspersen v. W. Union, LLC,* No. 23-CV-00923-NYW-SBP, 2023 WL 6602123 (D. Colo. Oct. 10, 2023). App. RE. 14-1 at 38-39.  In *Caspersen*, the plaintiff espoused a belief that "innocent life is sacred to God, from conception to birth, to natural death" and that it would go "against [his] faith and [his] conscience to commit sin". *Id.* at *8-9. Unlike Ms. Sturgill, the plaintiff in *Caspersen* alleged more than a blanket "reliance on my conscience" argument as to why he sought an exemption from the COVID-19 vaccine. The *Caspersen* plaintiff stated that the COVID-19 vaccine went against his pro-life beliefs and that receiving the vaccine would be a sin. *Id.* Relying on the *Africa* factors, the *Caspersen* Court determined that these allegations were sufficient to survive a motion to dismiss because they "satisf[ied] [*Africa*'s] 'ultimate ideas criterion,' [that] a belief must deal with such things as 'life and death, right and wrong, and good and evil' or 'underlying theories of man's nature or his place in the Universe' " … and sufficiently put Defendant on notice of the nature of his objection such that they 'provide[ ] the Court with adequate insight into his subjective beliefs, how those beliefs arise from his religious belief-system, and how those beliefs form the basis of his objection to the COVID-19 <u>vaccinations</u> to survive a motion to dismiss…'" Ms. Sturgill cannot analogize her case to the plaintiff in *Caspersen*

because she did not identify any religious reason as to why the COVID-19 vaccine would go against her conscience.

Finally, Ms. Sturgill's reliance on *Scafidi v. B. Braun Med., Inc*., No. 8:22-CV-2772-VMC-TGW, 2024 WL 184258 (M.D. Fla. Jan. 17, 2024) is also unhelpful to her claims. The *Scafidi* opinion is an unpublished outlier decision that flies in the face of well-established case law that reliance on one's conscience is not a religious belief under Title VII. In *Scafidi*, the U.S. District Court for the Middle District of Florida held that Ms. Scafidi's belief that she must follow her conscience and avoid the COVID-19 was enough to submit to the trier of fact as to the credibility of her beliefs, despite evidence on the record that her ultimate motivation was one of vaccine safety.[4] *Id.* at *8-9.

In its Order, the District Court highlighted various cases across the country that have concluded that a belief founded on one's conscience was not "religious". For instance, in *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487 (3d Cir. 2017), the Third Circuit upheld the lower court's dismissal of a Title VII failure to accommodate claim because the plaintiff's reliance on his conscience did not amount to a *bona fide* religious belief. In *Fallon*, the plaintiff believed that "one should not harm their [sic] own body and strongly believes that the flu vaccine may

---

[4]  The *Scafidi* matter ultimately settled prior to trial on this issue.

do more harm than good" and that taking the flu vaccine would "violate his conscience as to what is right and what is wrong." *Id.* at 492. The Third Circuit concluded that these beliefs evinced a concern about health effects of the flu vaccine and did not "address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature." *Id.* (relying on the *Africa* factors to assess religiosity of Fallon's belief system).

Additionally, in *Passarella v. Aspirus, Inc*., Nos. 22-cv-287, 2023 U.S. Dist. LEXIS 40958, at *3 (W.D. Wis. Mar. 10, 2023), one plaintiff, Melissa Passarella, argued that she must rely on her conscience and that God dwells in her body. Ms. Passarella acknowledged that she had received other vaccines, but that her conscience prevents her from taking the COVID-19 vaccine. *Id.* She further stated "after prayerful consideration, I do not feel at peace about the COVID-19 vaccine," and that, "[a]lthough it comes highly recommended by physicians, it goes against my conscience to receive it; therefore, I abide by that, as I know it is a message from God. James 4:17 states that failing to obey our conscience is a sin." *Id.* The *Passarella* Court determined that Ms. Passarella's beliefs were not protected under Title VII because "there is no religious belief that would prevent Passarella from taking the vaccine if she believed it was safe. Indeed, Passarella says that she has not refused all vaccines. Rather, she makes 'shrewd' decisions about vaccine safety and refuses those she believes pose undue risk." *Id.* at *5. *See also, Finkbeiner v.*

*Geisinger Clinic,* 623 F. Supp. 3d 458 (M.D. Pa. 2022), <u>appeal dismissed,</u> No. 22-

2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023)(concluding that a plaintiff's belief

"that she has a 'God given right to make [her] own choices" was areligious); *Dzik v.*

*Accident Fund Ins. Co.*, No. 1:23-CV-193, 2024 WL 662485 (W.D. Mich. Jan. 25,

2024)("distilled to their essence, Plaintiff seems to be saying that his religious beliefs

require him to follow his conscience, and his conscience led him to decide that he

did not want to receive the COVID-19 vaccine. Plaintiff's proposed allegations

verge on a 'blanket' determination of religiosity and conscience that would allow

him to 'avoid[ ] all unwanted obligations.'"); *Griffin v. Massachusetts Dep't of*

*Revenue,* No. 22-CV-11991-FDS, 2023 WL 4685942, at *7 (D. Mass. July 20,

2023)(holding that a plaintiff's allegations that she "closely contemplated with God

and [had] been shown that [her] should not receive the COVID-19 vaccine" was not

religious in nature because "unadorned declaration that God had 'shown' her that

she should not receive the vaccine, without more, is insufficient to establish a

plausible basis to infer that the beliefs or practices of her religion prevent her from

being vaccinated against COVID-19."); *Devore v. Univ. of Ky. Bd. of Trs.,* No. 5:22-

cv-00186-GFVT-EBA, 2023 U.S. Dist. LEXIS 167239 (E.D. Ky. Sep. 18, 2023)

("Ms. DeVore claims a religious belief that she must be "able to choose what shall

or shall not happen" to her and must live as God 'would have [her] live.' Simply,

this seeks a religious objection to any requirement with which she disagrees. This is not a religious belief but rather an isolated moral teaching.")

Accordingly, the District Court did not err in rejecting Ms. Sturgill's argument that the dictates of her conscience qualify as a "religious belief" deserving of Title VII protections.

The District Court correctly concluded that though Ms. Sturgill's Accommodation Request included religious verbiage that she is "wonderfully and fearfully made" and that receiving the COVID-19 vaccine would "alter God's design", her medical concern about the safety of the vaccine underscored an areligious motivation for refusing the vaccine. Ms. Sturgill attempts to rebut the District Court's conclusion by claiming that her beliefs are not about vaccine safety, but about a concern that the vaccine would "defile" her body. App. R. at p. 48-49. This argument also fails. In *Petermann v. Aspirus, Inc*., No. 22-CV-332-JDP, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023), the Court rejected the plaintiff's argument that the COVID-19 vaccine "defiled her body" and stated that, "[t]he important question isn't whether an employee has a religious belief not to mistreat her body; *the question is whether the employee's belief that the vaccine qualifies as mistreatment is itself based in religion*." (Emphasis added).  The *Petermann* court further noted that if the plaintiff "believed that the vaccine defiled her body because it was unhealthy or unsafe, that would be a medical objection..." *Id.*

Further, in *Passarella*, the court determined that one of the plaintiffs alleged enough of a religious nexus to pass muster at the motion to dismiss stage. 2023 WL 2455681 at *6-7. Plaintiff Cynthia Clutter sought exemption from the COVID-19 vaccine based on her "moral conscience and best judgment", and her belief that she must remain as God made her. *Id.* Critical to the Court's decision in allowing Ms. Clutter's claim to move forward was her declaration that:

> I oppose all vaccines. My children are not vaccinated. My husband has never been vaccinated. My son is not circumcised. We are the way God made us. It is my right [as] an American and a Christian to remain that way.

*Id.* The *Passarella* court determined that while Ms. Clutter's religious beliefs were not thoroughly explained and that her aversion to the COVID-19 vaccine may ultimately be shown to be a medical judgment, she stated that her and her family's history of not altering their bodies with vaccines or by circumcision was enough to back her claim that she must remain as "God made her." *Id.* Here, Ms. Sturgill does not allege that she avoids *all* vaccines or otherwise practices in a way to avoid changing herself as to not alter God's design. Rather, she claims that since receiving the Hepatitis B vaccine years ago, her beliefs have evolved such that she should *only* avoid the COVID-19 vaccine. The District Court properly concluded that such a belief stems from a concern about the COVID-19 vaccine's safety rather than an actual religious belief.

**B.    The District Court Correctly Held that Ms. Sturgill's Failure to Accommodate Claim Does Not Encompass a Traditional Disparate Treatment Claim**

Ms. Sturgill next claims that the District Court erred in holding that she did not assert a traditional disparate treatment claim. Ms. Sturgill continues to misunderstand the law related to disparate treatment and disparate impact. In *EEOC v. Abercrombie & Fitch Stores, Inc.*, the court held that there are two proscriptions under Title VII which may amount to a cause of action: (1) disparate treatment or "intentional discrimination" and (2) disparate impact. 575 U.S. 768, 771 (2015). In the Sixth Circuit, claims alleging intentional discrimination are segregated in to two separate theories in which a plaintiff must prove a distinct set of elements to succeed. *Reed v. Int'l Union*, 564 F.3d 781,784 (6th Cir. 2009)("[t]here are two basic types of religious discrimination claims that an individual may bring…under Title VII: disparate treatment claims and religious accommodation claims."); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000)(elements of a failure to accommodate claim differ from a traditional disparate treatment claim, therefore, the court rejected the plaintiff's attempt to "spin" her claims into the other theory).

The District Court correctly held that Ms. Sturgill did not allege a traditional disparate treatment claim. Here, Ms. Sturgill's SAC alleges only a single count of disparate treatment which is titled, "Religious Discrimination—Failure to Accommodate". SAC, RE. 32 at PageID. 551. The SAC is also devoid of any

allegation that might remotely support an inference of a traditional disparate treatment claim.

"Disparate treatment occurs when members of a protected group have been denied the same employment opportunities available to other employees." *Martin v. Saginaw Cnty. Rd. Comm'n,* 606 F. Supp. 3d 639, 646 (E.D. Mich. 2022). In the absence of direct evidence, a plaintiff may establish a prima facie case of discrimination by showing that: "(1) [s]he belonged to a protected class, (2) suffered an adverse employment action, (3) met the qualifications for h[er] position, and (4) was treated differently from a similar employee who [did] not belong to [her] protected class." *Hudson v. City of Highland Park*, 943 F.3d 792, 802 (6th Cir. 2019) (*citing Tepper v. Potter*, 505 F.3d 508, 515-17 (6th Cir. 2007)).

Ms. Sturgill claims that because discovery closed prior to the District Court's ruling on the Motion to Dismiss, and because she learned through discovery that the Red Cross granted religious accommodations to employees who "opposed the COVID-19 vaccine on anti-abortion grounds, due to the use of fetal cell tissue in the development and anti-abortion grounds," she should be able to rely on that evidence to demonstrate a traditional disparate claim. However, Ms. Sturgill cannot now, during the appeal stage of her case, claim that evidence exists that she was treated differently from other similarly situated employees when she did not allege so in her pleadings. *Armengau,* 7 F. App'x at 345; *Pugh v. Holden-Selby*, No. 2:15-CV-10604-

GAD-PTM, 2015 U.S. Dist. LEXIS 105136, at *7 (E.D. Mich. July 1, 2015) (The dismissal standard scrutinizes the pleadings and "the Federal Rules limit courts' consideration of extraneous materials at this stage.") The fact is, Ms. Sturgill's SAC contains no allegation that she was treated less favorably than other similarly situated Red Cross employee. Accordingly, the District Court correctly concluded that she did not allege a traditional disparate treatment claim.

## V.    CONCLUSION

For the reasons stated above, this Court should affirm the District Court's ruling in its December 15, 2023 Order.

April 8, 2024

Respectfully submitted,

**BALLARD SPAHR, LLP**

/s/ Constantinos G. Panagopoulos
Constantinos G. Panagopoulos
Sarabeth Rangiah
BALLARD SPAHR, LLP
1909 K Street NW - 12th Floor
Washington, DC 20006
202-661-2202
cgp@ballardspahr.com
rangiahs@ballardspahr.com

Attorney for the Defendant-Appellee
The American Red Cross

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed.R.App.P. 32(g) and 6 Cir.R. 32(a), the undersigned certifies

that the Red Cross's Principal Brief:

(1)    complies with the type-volume limitation of Fed.R.App.P. 32(a)(7) because this brief, excluding the parts of the brief exempted by Fed.R.App.P. 32(f), contains 7261 words.

(2)    complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

/s/ Constantinos Panagopoulos
Constantinos Panagopoulos

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 8, 2024, the foregoing *Corrected Brief of Defendant-Appellee The American Red Cross* was filed via the Court's electronic filing system.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties, including the following counsel of record, may access this filing through the Court's electronic filing system:

> Colin H. Wilkin
> Hurwitz Law, PLLC
> 340 Beakes St. Ste. 125
> Ann Arbor, MI 48104
> (844) 487-9484
> colin@hurwitzlaw.com
> *Counsel for Plaintiff-Appellant Aimee Sturgill*

> /s/ *Constantinos Panagopoulos*
> Constantinos Panagopoulos

No. 24-1011

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AIMEE STURGILL,

Plaintiff-Appellant,

v.

AMERICAN RED CROSS,

Defendant-Appellee

On appeal from the United States District Court for the
Eastern District of Michigan, Southern Division
Case No. 2-22-CV-11837, Judge Paul D. Borman

## ADDENDUM TO DEFENDANT- APPELLEE BRIEF

Constantinos G. Panagopoulos
Sara Rangiah
**Ballard Spahr LLP**
1909 K Street N.W.
12th Floor
Washington DC 20006
cgp@ballardspahr.com
rangiahs@ballardspahr.com
COUNSEL FOR DEFENDANT-APPELLEE

Date: April 8, 2024

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Description | Page ID # |
|---|---|---|
| RE 21 | Second Amended Complaint and Jury Demand | 252-254 |
| RE 27 | Defendant- Appellee's Motion to Dismiss | 400-430 |
| RE 28 | Declaration of Jennell Shannon In Support of Defendant, The Red Cross's Motion to Dismiss Plaintiff's Second Amended Complaint | 431-460 |
| RE 32 | Plaintiff's Response in Opposition to Defendant's Motion to Dismiss | 551 |
| RE 44 | Plaintiff's, Supplemental Brief in Opposition to Defendants' Motion to Dismiss | 806-826 |
| RE 48 | Defendant, The American Red Cross Motion for Summary Judgment | 1096-1098 |
| RE 60 | Order Granting Defendants Motion to Dismiss | 1943- 1968 |